**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MICHAEL BURNETT,

     *Plaintiff,*

   *v.*

AMIE JENKINS, MATT MACAULEY,
OFFICER JONES, OFFICER ELROD,
and JANE DOES,

     *Defendants.*

_____/

CASE NO. 19-cv-13513
DISTRICT JUDGE GERSHWIN A. DRAIN
MAGISTRATE JUDGE PATRICIA T. MORRIS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANT MACAULEY'S MOTION FOR SUMMARY JUDGMENT (ECF No. 13)

### I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant Macauley's Motion for Summary Judgment, (ECF No. 13), be **GRANTED**.

### II.    REPORT

#### A. Introduction

On November 26, 2019, Plaintiff Michael Burnett, who appears before the Court *pro se*, filed this complaint against Defendants Amie Jenkins, Matt Macauley, and individuals identified only as Officer Jones, Officer Elrod, and Jane Does, (ECF No. 1, PageID.1) (collectively, "Defendants"), alleging a violation of the Eighth Amendment. (*Id.*)

1

This Court granted a motion to exclude this case from the Pro Se Early Mediation Program. (ECF No. 11.) All pretrial matters were assigned to the undersigned magistrate judge on April 23, 2020. (ECF No. 15.) Plaintiff filed a Motion for a TRO and Preliminary or Permanent Injunction on the same day as his complaint, November 26, 2019. (ECF No. 3.) The undersigned recommended denial of that Motion on July 2, 2020, (ECF No. 20), which was adopted on November 30, 2020. (ECF No. 29.) Defendant Macauley, alone, filed the instant Motion for Summary Judgment on April 13, 2020, (ECF No. 13), "based solely on failure to exhaust administrative remedies," to which Plaintiff responded and all named Defendants[1] replied. (ECF Nos. 18, 22.) This Motion was referred to the undersigned magistrate judge on April 23, 2020. (ECF No. 15.) Below, I summarize the allegations set forth in the instant Motion, as well as allegations in the complaint insofar as they correspond to the relief sought at this juncture.

### B. Factual Background

In his complaint, Plaintiff alleges that Defendants Elrod and Jones forced him to "swallow their feces and other human waste" at the Macomb Correctional Facility jail. (ECF No. 1, PageID.2.) When Plaintiff went to file a grievance, he alleges that Defendant Jenkins told him he "did not know who he was f****** with." (*Id*.)  In retaliation, Plaintiff claims, he was transferred to the Bellamy Creek Correctional Facility. (*Id*. at PageID.2.) Plaintiff claims that Defendants Jane Does, at the Bellamy Creek Correctional Facility,

---

[1] Although it is only Defendant Macauley who seeks summary judgment in this Motion, and is mentioned throughout the Motion and the Reply, the Reply indicates that it is on behalf of all MDOC Defendants. (ECF No. 22, PageID.366-367.)

deliver hostile messages to him from Defendants at the Macomb Correctional Facility. (*Id*.) Plaintiff alleges that at Bellamy Creek Correctional Facility, he continues to be forced to swallow fecal matter. (*Id*.)

Plaintiff states that, in response to his grievances, Defendant Macauley "attempted to reinforce the false mental health label that was placed on [Plaintiff]," and that "[Plaintiff] was falsely labeled as paranoid and schizophrenic by mental health staff who attempted to cover up the fact that [he] was being forced to swallow human waste." (*Id*. at PageID.4.) He claims that Defendant Macauley "exercised deliberate indifference to [his] health and safety because he refused to disclose the identities of the officers who are forcing [him] to swallow feces, urine, and other human and animal waste[.]" (ECF No. 1, PageID.7.)

In addition, Plaintiff provides that he has a disease known as Gastro Esophageal Reflux Disease, "which causes [him] to suffer debilitating chest pain that mimic[s] a heart attack," and that he takes prescription medication for this condition; Plaintiff claims that the medication is rendered "useless" because he is "forced to swallow feces and other human waste by Defendants [Jane Does] on every shift and every day." (*Id*. at PageID.6.) Plaintiff provides copies of his many filed grievances and grievance appeals, which were all rejected by the jail and Department of Corrections. (*Id*. at PageID.11, 14, 17, 20, 23, 25, 26, 27.)

In his complaint, Plaintiff seeks: an injunction ordering Defendants to stop forcing him to swallow fecal matter; ordering Defendant Macauley to report "physical assaults with feces" to the Michigan State Police; $100,000 in punitive damages; and $100,000 in compensatory damages. (*Id*. at PageID.7-8.)

3

In the present Motion, Defendant Macauley argues that Plaintiff failed to exhaust his administrative remedies prior to filing his complaint, and that in any event Defendant Macauley is protected by Eleventh Amendment immunity as a State of Michigan employee acting in his official capacity. (ECF No. 13.)

### C. Summary Judgment Standard

When a movant shows that "no genuine dispute as to any material fact" exists, the court will grant her motion for summary judgment. Fed. R. Civ. P. 56(a). In reviewing such a motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will

appear later. 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493. And while a *pro se* party's arguments are entitled to liberal construction, "this liberal standard does not, however, 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D. N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D. N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. The court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the

5

evidence is such that a reasonable jury could return a verdict for the non-moving party."
*Anderson*, 477 U.S. at 248.

### D. Governing Law

#### 1.      PLRA

Congress passed the Prison Litigation Reform Act of 1995 ("PLRA") in response to a "sharp rise in prisoner litigation in the federal courts." *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). By passing the PLRA, Congress attempted to ensure that "the flood of nonmeritorious [prisoner civil rights] claims [did] not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 202 (2007). Congress equipped the PLRA with several mechanisms designed to reduce the quantity and increase the quality of the claims that came to federal court. *Id.* A "centerpiece" of the PLRA was the "invigorated" exhaustion requirement: "No action shall be brought with respect to prison conditions under [§ 1983] . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2000); *see also Woodford*, 548 U.S. at 84 ("A centerpiece of the PLRA's effort 'to reduce the quantity . . . of prisoner suits' is an 'invigorated' exhaustion provision.") (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Courts consider the PLRA's suits "brought with respect to prison conditions" to include "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

The *Woodford* Court held that the PLRA's exhaustion of administrative remedies mandate requires both (1) that no remedies currently remain available, and (2) that the remedies that had been available to the prisoner were "properly" exhausted. 548 U.S. at 93. Prior to *Woodford*, there were conflicting interpretations of the PLRA's exhaustion requirement. Some circuits interpreted the exhaustion requirement to mean that plaintiffs must have no more administrative remedies available before bringing their cases to federal court. *Id.* Others interpreted it to mean that plaintiffs must have "properly" exhausted their available remedies by following the agency's procedural requirements such as "deadlines and other critical procedural rules." *Id.*

In finding that exhaustion of remedies required "proper" exhaustion, the Court was persuaded by the "striking" similarities between the language of the PLRA and the doctrine of exhaustion in administrative law. *Id.* at 102. It also considered the purposes behind the exhaustion requirement, reasoning that an interpretation that did not require proper exhaustion would render the PLRA "toothless"—enabling a prisoner to bypass prison remedies by simply disregarding or ignoring deadlines. *Id.* at 95. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules." *Id.* at 90. Complaints and appeals must be filed "in the place, and at the time, the prison's administrative rules require." *Id.* at 87 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

In *Jones*, the Court instructs us to look to the prison's policy itself when determining "whether a prisoner has properly exhausted administrative remedies—specifically, the level of detail required in a grievance to put the prison and individual officials on notice of

7

the claim." 549 U.S. at 205; *id.* at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the *prison's requirements*, and not the PLRA, that define the boundaries of proper exhaustion." (emphasis added)). Specifically, the *Jones* Court was determining whether a plaintiff needed to identify the defendant by name during the initial grievance process. Since the MDOC's policy at the time did not require that level of specificity, the Court did not find that the PLRA required it. *Id.* at 218. However, the current MDOC policy requires this level of specificity. MDOC Policy Directive ("PD") 03.02.130 (eff. July 9, 2007). *See also* MDOC PD 03.02.130 (eff. March 18, 2019) ("Information provided shall be limited to the facts involving the issues being grieved (i.e., who, what, when, where, why, how.) Dates, times, places and names of all those involved in the issue being grieved are to be included." MDOC PD 03.02.130(S) (eff. March 18, 2019)).

A plaintiff does not need to show proper exhaustion as a part of their complaint. *Jones*, 549 U.S. at 216. Rather, failure to properly exhaust remedies is an affirmative defense. *Id.*

### 2.      MDOC Policy

The MDOC provides prisoners with a grievance procedure for bringing forward their concerns and complaints. *See* MDOC PD 03.02.130 (eff. July 9, 2007); MDOC PD 03.02.130 (eff. March 18, 2019). The MDOC's grievance procedure consists of steps that a prisoner must follow prior to filing a complaint in court, and each step is accompanied by a time limit. First, the grievant must attempt to resolve the issue with the person involved

"within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control." MDOC PD 03.02.130(P) (eff. July 9, 2007).

If the initial attempt to resolve the issue with the person involved is impossible or unsuccessful, the inmate must then submit a Step I grievance form within five days. MDOC PD 03.02.130(V) (eff. July 9, 2007). If the grievance is accepted, the prison staff is required to respond in writing to a Step I grievance within fifteen days, unless an extension is granted. MDOC PD 03.02.130(X) (eff. July 9, 2007). The policy provides the following instructions regarding the information that needs to be included in a grievance:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

MDOC PD 03.02.130(R) (eff. July 9, 2007). If the inmate is not satisfied with the response, or does not receive a response within fifteen days, he must file a Step II appeal within ten business days. MDOC PD 03.02.130(BB) (eff. July 9, 2007). Once again, if the inmate is dissatisfied with the response at Step II or does not receive a Step II response within fifteen days, he has ten business days to submit a Step III appeal to the Prisoner Affairs Section. MDOC PD 03.02.130(FF) (eff. July 9, 2007). "To file a Step III grievance, the grievant must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form . . . ." *Id.* The Step III response concludes the administrative grievance process. According to MDOC policy, a grievance is not complete until the MDOC has responded to the Step III grievance. MDOC PD 03.02.130(B), (FF), (GG) (eff. July 9, 2007).

*Woodford* and *Jones* require inmates to file grievances that conform to MDOC procedures in order to properly exhaust available remedies. 548 U.S. at 93; 549 U.S. at 218.

### E.  Analysis

Defendant Macauley posits Plaintiff's failure to exhaust administrative remedies against him as a defense to Plaintiff's claims. (ECF No. 13.) Defendant asserts that although Plaintiff filed 32 grievances, none of them named Defendant Macauley in connection to the alleged events in the Complaint, and he argues in turn that the only grievance that mentions Defendant Macauley does not concern the events alleged in the Complaint. (ECF No. 13, PageID.16-17.)

Based on the evidence submitted by Defendant in support of his Motion, Plaintiff's 32 grievances appear to have concerned the following alleged events and individuals: a nurse that falsified Plaintiff's medical records (ECF No. 13, Exhibit D); unnamed officers bragging about urinating and defecating in Plaintiff's mouth (but does not name any of the Defendants to this action) (Exhibit E); officers threw away his personal belongings in retaliation of a lawsuit (Exhibit F); officers removed patches of hair from Plaintiff's head in retaliation of a lawsuit (Exhibit G); a mental health professional denied Plaintiff access to a psychiatrist (Exhibit H); his doctor would not terminate his psychiatric medication as a form of retaliation (Exhibit I); Defendant Jones assaulted Plaintiff with feces (Exhibit J); Plaintiff was denied a testicular examination (Exhibit K); a law book that Plaintiff ordered was badly damaged (Exhibit L); an unnamed officer put feces in Plaintiff's mouth (Exhibit M); the grievance coordinator conspired with the nurse practitioner to murder Plaintiff by refusing him medical care to his testicle (Exhibit N); Plaintiff did not receive proper

medical care for a lump on his testicle (Exhibit O); Defendant Jenkins transferred Plaintiff to a different facility in retaliation for filing a complaint with the Michigan State Police regarding Defendants Elrod and Jones putting feces in Plaintiff's mouth (Exhibit P); notably, the only grievance in which this writer could identify Defendant Macauley, alleged that he refused to disclose the names of officers who prevented Plaintiff from brushing his teeth and who held his hands back, disallowing him from brushing his teeth for two and a half years, and for instructing "the grievance coordinator to reject all of my grievances as vague against him and his officers . . . because these officers are physically attacking me" (Exhibit Q); unidentified officers put feces in Plaintiff's mouth when he was transferred to a new facility (Exhibit R); Defendant Jones assaulted Plaintiff with feces out of retaliation (Exhibit U); and Officers Jones and Elrod, among others, assaulted Plaintiff with urine and feces (Exhibit CC). I decline to summarize the remaining several grievances, of which there are many, as none of them involve Defendant Macauley or any of the other named Defendants or else do not involve conduct complained of in the Complaint.

Defendant argues that Plaintiff never filed a grievance complaining that Defendant Macauley violated his Eighth Amendment rights through deliberate indifference to his health, specifically regarding being force-fed feces, as alleged in his Complaint. (ECF No. 13, PageID.115.) Defendant refers to the MDOC grievance policies effective both in 2007 and 2019, respectfully applicable to Plaintiff's grievances filed before and after March 18, 2019, which require that "'[d]ates, time, places, and names of all those involved in the issue being grieved are to be included' in the initial grievance." (ECF No. 13, PageID.114-115.) Defendant also relies on *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010), where

11

the Sixth Circuit held: "Under the Department of Corrections' procedural rules, inmates must include the '[d]ates, times, places and names of all those involved in the issue being grieved' in their initial grievance."

I note that Plaintiff only appears to have named Defendant Macauley in one grievance, attached to this Motion as Exhibit Q. That grievance alleges Defendant Macauley conspired with "the grievance coordinator to reject all of my grievances as vague against him and his officers . . . because these officers are physically attacking me." (ECF No. 13, Exhibit Q, PageID.236.) The grievance read as a whole only specifies conduct relating to officers who disallowed Plaintiff to brush his teeth and held him back from brushing his teeth by "holding onto [his] wrist[,]" resulting in cavities on the lower right side of his mouth and a broken tooth. (*Id.* at PageID.236.)   Although this grievance references Defendant Macauley and also references a "physical[] attack," it would not be a fair or accurate reading of the grievance to superimpose the allegation of being force-fed feces considering the whole of the document. Plaintiff does not name Defendant Macauley in a grievance that mentions the complained-of conduct. To the extent that Plaintiff mentions a "physical attack" in connection with Defendant Macauley, the only grievance to do so refers to an incident that has not been raised in this action.

Based on the foregoing analysis of Plaintiff's grievances, it does not appear that Plaintiff has fully grieved the allegations complained of against Defendant Macauley. Indeed, MDOC policy requires that a properly exhausted grievance include "[d]ates, times, places and names of all those involved in the issue being grieved[.]" MDOC PD 03.02.130(R) (eff. July 9, 2007). Plaintiff has failed to do so regarding Defendant Macauley

12

here. Further, "to withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas*, 757 F. Supp. 2d at 492. Plaintiff has not presented evidence that a genuine issues of material fact exists as to his grievance against Defendant Macauley and Plaintiff, as the non-moving party, has failed to adequately respond to the present summary judgment motion; a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Finally, based on the foregoing analysis, I decline to analyze Defendant Macauley's alternative argument regarding Eleventh Amendment immunity; regardless of whether Defendant Macauley is protected under said immunity, the claim is not properly brought at this time when it has not been exhausted and the failure to exhaust sufficiently supports the Motion. I recommend Defendant Macauley's Motion be granted.

### F. Conclusion

For the reasons discussed above, **IT IS RECOMMENDED** that Defendant Macauley's Motion for Summary Judgment, (ECF No. 13), be **GRANTED**. Defendant Macauley should hereafter be dismissed as a party to this action.

## III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections

constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  December 15, 2020                          S/ PATRICIA T. MORRIS
                                                  Patricia T. Morris
                                                  United States Magistrate Judge